Link to Docs # 128 & 132

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 08-5893 PSG (SSx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | Capital Bank PLC v. The M/Y Birgitta | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order Granting Plaintiff's Motion for Summary Judgment Against M/Y Birgitta

Pending before the Court is Plaintiff's Motion for Summary Judgment Against M/Y Birgitta and Motion *in Limine* No. 1 Against M/Y Birgitta. The Court finds these matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the moving and opposing papers, the Court GRANTS Plaintiff's Motion for Summary Judgment Against M/Y Birgitta. Accordingly, Plaintiff's Motion *in Limine* No. 1 Against M/Y Birgitta is hereby rendered MOOT.

I.      Background

In June 2005, Specially Appearing Claimant Juanita Group Ltd. ("Juanita") took out a $6 million loan with Plaintiff Capital Bank PLC ("Plaintiff" or the "Bank"), secured by a first preferred statutory ship mortgage on the Defendant vessel M/Y Birgitta ("Defendant" or the "vessel"). *See Pl.'s Statement of Uncontroverted Facts and Conclusions of Law ("SUF")* ¶ 1.[1] On June 28, 2005, Juanita executed a Marine Loan Agreement (the "Marine Loan") in the principal amount of $6 million plus interest payable in 120 monthly payments of $62,908.65. *See id.* ¶ 3. The Bank executed the Marine Loan on July 6, 2005, *see id.* ¶ 4, and Juanita executed and delivered to the Bank a Marine Mortgage (together with the Marine Loan, the "Mortgage Agreements") on June 28, 2005. *See id.* ¶ 7. On September 16, 2005, Juanita

---

[1] Where the cited facts are not in dispute, the Court will cite only to the SUF.

**Link to Docs # 128 & 132**

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5893 PSG (SSx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | Capital Bank PLC v. The M/Y Birgitta | | |

registered the vessel as a British Ship with the Registry of Shipping and Seamen ("ROSS") in Cardiff, Wales. *See Joint Stipulation of Facts Deemed True for All Purposes in Motions and at Trial ("Stip. Facts")*, SF 29.

    A.    <u>The Marine Loan</u>

The Marine Loan outlines several "Events of Default" and states that the occurrence of any of the defaulting events makes "all sums covenanted hereunder . . . immediately due and payable to [the Bank] without the need for any formal demand being made therefore." *See id.* ¶ 8; *see also Coppenrath Decl.* ¶ 3, Ex. 1 (copy of the Marine Loan signed by Plaintiff on July 6, 2005).[2]  Among others, the following events constitute a default under the Marine Loan:

- "if you fail to pay any sum under this Agreement and you still have not made payment 7 days after the due date for payment in the manner specified" (§ 9.1(i));

- "you fail to perform or comply with any other obligation expressed to be assumed by you in this Agreement and such failure is not remedied within thirty days after we have given notice to you" (§ 9.1(iii));

- "you fail to observe or to perform any of [your] obligations under the Marine Mortgage or any other document executed in accordance with it" (§ 9.1(viii)); and

- "where you are a limited company [and] there is any material change in your ownership or control . . . ." (§ 9.1(xiii)(c)).

Marine Loan § 9.1(i), (iii), (viii), (xiii)(c).

    B.    <u>The Marine Mortgage</u>

The Marine Mortgage also requires the mortgagor to "pay [the Bank] all sums of money when they become due and to discharge all liabilities which are now, or at any time may become due, owing or incurred by [the mortgagor] . . . upon any current loan or other account[.]" *See*

---

[2] In the interest of clarity, the Court will cite to the Marine Loan directly.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5893 PSG (SSx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | Capital Bank PLC v. The M/Y Birgitta | | |

*Coppenrath Decl.* 6, Ex. 3, at 4 (copy of Marine Mortgage).[3] As with the Marine Loan, the Marine Mortgage contains a list of defaulting events. *See SUF* ¶ 24; *see also* Marine Mortgage § 4(a). If any of the listed events occurs, "[a]ll sums hereby agreed to be paid shall become immediately due and payable to us without the need for any formal demand being made." *See* Marine Mortgage § 4(a). Among other events, a mortgagor defaults on the Marine Mortgage if (1) "any sum hereby covenanted to be paid is not received by [the Bank] within 14 days of its due date[,]" and (2) the company, if it is a limited company, experiences "any material change in ownership or control or [ceases] to be a subsidiary of any company or corporation of which [it is] a subsidiary at the date of this Mortgage." *Id.* § 4(a)(i), (xii).

Additionally, the Marine Mortgage requires the mortgagor to maintain insurance of the vessel. *See id.* § 8(a). The mortgagor's failure to "observe or to perform any of [its] obligations under this Mortgage" is a defaulting event, *see id.* § 4(a)(iii), and a failure to maintain insurance of the vessel would thus be a default under the Marine Mortgage. Additionally, failure to maintain insurance of the vessel could constitute a default under the Marine Loan. *See* Marine Loan § 9.1(viii) (providing for default in the event the mortgagor fails to satisfy any obligation under the Marine Mortgage).

The Marine Mortgage also requires that the vessel be maintained for "private use within the territorial waters or [sic] the United Kingdom except in so far as we have, provided our prior written consent to the Vessel being chartered via a charter company approved by us or, consented to you taking the Vessel outside the territorial waters or [sic] the United Kingdom." Marine Mortgage § 11(b). The Marine Mortgage does, however, include a handwritten notation that the vessel will be kept at "Europe." *See* Marine Mortgage, at 2.

  C. <u>Payments Under the Agreements</u>

On July 6, 2005, Plaintiff funded the loan in the amount of $6 million to Carl and Anneli Freer. *SUF* ¶ 11; *Def.'s Separate Statement of Genuine Issues ("SGI")* ¶ 11; *Stip. Facts*, SF 29. Carl and Anneli Freer were the directors of Juanita at the time. *See Stip. Facts*, SF 2. Pursuant to the Bank's standard procedure, the "Commencement Date" of the loan was set as August 9, 2005, one month after the loan was funded. *SUF* ¶ 12. According to the Marine Loan, Juanita

---

[3] As with the Maritime Loan, the Court will cite to the Marine Mortgage directly.

**Link to Docs # 128 & 132**

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5893 PSG (SSx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | Capital Bank PLC v. The M/Y Birgitta | | |

was required to pay Plaintiff $62,908.56 in 120 monthly installments beginning in August 2005. *See id.* ¶ 13. Juanita made the following payments:

- the August, September, and October 2005 payments by October 6, 2005;[4]

- the November 2005 payment on November 15, 2005;

- the December 2005 payment on December 28, 2005;

- the January 2006 payment on January 11, 2006;

- the February 2006 payment on March 7, 2006;

- the March 2006 payment on April 3, 2006;

- the April 2006 payment on April 28, 2006; and

- the May 2006 payment on April 28, 2006.

*SUF* ¶ 14; *SGI* ¶ 14.

    D.    <u>Insurance of the Vessel</u>

In April 2005, Juanita purchased a Hull policy and a Protection and Indemnity policy for the vessel from Bond & Stein Commercial Ltd. ("Bond & Stein"), a London insurance broker. *See SGI* ¶¶ 60, 62; *see also Coppenrath Decl.* ¶ 8, Ex. 100 (copy of the 2005-2006 Protection and Indemnity policy). The 2005-2006 Protection and Indemnity policy insured the vessel in the "[w]aters of the United States of America for no more than 14 days after inception." *See SGI* ¶ 63. In late July 2005, Juanita shipped the vessel from the United Kingdom to the United States.

---

[4] The August, September, and October 2005 payments were made in October 2005 due to a delay after the parties learned that the method prescribed by the loan agreements, direct debit, would not be possible from a United States bank. *See SUF* ¶ 15.

**Link to Docs # 128 & 132**

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5893 PSG (SSx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | Capital Bank PLC v. The M/Y Birgitta | | |

*See Stip. Facts*, SF 33(l).[5]  On August 4, 2005, Bond & Stein issued an "Addendum" indicating that "[o]nce [the] vessel has arrived in Mexico it is agreed to amend cruising range to Mexico, Caribbean, Bahamas and the West Coast of the U.S.A." for an additional premium of $44,896.85.  *See SGI* ¶ 66, *see also Coppenrath Decl.* ¶ 9, Ex. 103 (copy of August 4, 2005 Addendum).

In April 2006, Juanita renewed the Hull and Protection and Indemnity insurance policies with Bond & Stein to cover the vessel from April 4, 2006 to April 4, 2007 (the "2006-2007 Policies").  *See SGI* ¶ 68; *see also Coppenrath Decl.* ¶ 12, Ex. 109 (copy of 2006-2007 Policies). The 2006-2007 Policies, however, only insured the hull of the vessel for cruising in the "[w]aters of the United States of America for no more than 16 days after inception," or until April 20, 2006 (16 days after the August 4, 2006 inception of the 2006-2007 Policies).  *See SGI* ¶ 69; *see also Coppenrath Decl.*, Ex. 109.

E.   Arrest of the Vessel and Post-Arrest Developments

On May 4, 2006, 14 days after the hull policy apparently lapsed, Plaintiff filed a complaint in this Court and arrested the vessel.  Seven days after the arrest, Bond & Stein issued an endorsement to the 2006-2007 Policies (the "2006-2007 Endorsement") on May 11, 2006 to reflect that the vessel was insured while on the west coast of the United States.  *See SGI* ¶ 70. According to the 2006-2007 Endorsement:

Underwriters hereby note and agree with effect from inception that Trading should correctly read as follows:

Mexico, Caribbean, Bahamas and the West Coast of the U.S.A.

---

[5] Plaintiff contends that it learned of the shipment to the United States on April 24, 2005, *see SUF* ¶ 19, but Plaintiff stipulated that "Juanita brought the Birgitta into UK waters in May 2005 where it remained until being shipped to the U.S. in late *July 2005*," *see Stip. Facts*, SF 33(l) (emphasis added).  Thus, according to Plaintiff's chronology, the Bank learned of the shipment before the vessel was taken to the United States.  The Court relies on the date to which the parties stipulated.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5893 PSG (SSx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | Capital Bank PLC v. The M/Y Birgitta | | |

*Coppenrath Decl.* ¶ 19, Ex. 127.

On July 6, 2007, Plaintiff learned that Carl Freer resigned as director of Juanita on June 5, 2007. *See SUF* ¶ 26. That day, Plaintiff also learned that Michael Fleming purchased Juanita through a company named Business Management and Consultancy Limited. *See id.* ¶ 27. Furthermore, Defendant admits that the last payment made under the Mortgage Agreements was made on April 28, 2006, *see SGI* ¶ 14, even though Juanita was obligated to make 120 monthly payments, *see SUF* ¶ 3.

On January 10, 2008, Plaintiff voluntarily dismissed the action to promote settlement, but re-filed on September 9, 2008. On March 27, 2009, Plaintiff filed a Verified First Amended Complaint against the vessel and Juanita. *See* Dkt. #23. On May 13, 2010, Plaintiff filed a Motion for Summary Judgment Against M/Y Birgitta on the grounds that there exists no genuine factual dispute that Juanita defaulted on the Mortgage Agreements. That day, Plaintiff also filed a Motion *in Limine* No. 1 Against M/Y Birgitta. As the Court finds that Plaintiff is entitled to judgment as a matter of law, the Court does not consider Plaintiff's Motion *in Limine* No. 1.

II.     Legal Standard

Federal Rule of Civil Procedure 56(c) establishes that summary judgment is proper only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). If the moving party satisfies this burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial. *See id.* at 257. A non-moving party who bears the burden of proving an essential element to its case at trial must sufficiently establish a genuine dispute of fact with respect to that element or face summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). An issue of fact is a genuine issue if it can reasonably be resolved in favor of either party. *See Anderson*, 477 U.S. at 250-51. Furthermore, "a district court has the responsibility to construe all facts in the light most favorable to the non-moving party." *Nelson v. City of Davis*, 571 F.3d 924, 928 (9th Cir. 2009).

**Link to Docs # 128 & 132**

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5893 PSG (SSx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | Capital Bank PLC v. The M/Y Birgitta | | |

III.  Discussion

In its Motion for Summary Judgment Against M/Y Birgitta, Plaintiff contends that Juanita defaulted on the Mortgage Agreements when Juanita (1) made untimely payments, (2) underwent a material change in ownership, (3) allowed the hull insurance of the vessel to lapse, and (4) shipped the vessel to the United States without prior written consent of the Bank. *See Mot.* 6:14-10:9. While the Court finds that genuine factual issues exist as to three of these alleged defaulting events, no genuine issue exists as to two post-arrest defaults, warranting summary judgment against Defendant.

  A.   The Court Has Subject Matter Jurisdiction

As a preliminary matter, the Court has jurisdiction to dispose of Plaintiff's motion. Under the Ship Mortgage Act ("SMA"), 46 U.S.C. § 31325(b)(1), (c), federal courts have exclusive jurisdiction over actions to foreclose on "preferred mortgages" on foreign vessels. *See Beluga Holding, Ltd. v. Commerce Capital Corp.*, 212 F.3d 1199, 1202 (11th Cir. 2000). A mortgage on a foreign vessel is "preferred" under the statute if it (1) was executed under the laws of the foreign country under whose laws the ownership of the vessel is documented and (2) has been registered under those laws "in a public register at the port of registry of the vessel or at a central office." *See id.* at 1202 n.8 (citing 46 U.S.C. § 31301(6)(B)).

In the Court's December 2, 2009 Order Denying Defendants' Motion to Dismiss, the Court determined that it has subject matter jurisdiction over this case. *See* Dkt. #117. In its motion, Defendants argued that the Court lacked jurisdiction because Plaintiff was required under the Companies Act 1985 to register the mortgage at the Registrar of Companies at Companies House ("Companies House"). *See id.* at 2-3. Plaintiff registered the mortgage only at ROSS, the public register at the port where Juanita registered the vessel. *See id.* at 1. Even assuming the Companies Act imposed a dual registration requirement on the Bank, the Court concluded that the mortgage was a "preferred mortgage" under the SMA because Plaintiff registered it at ROSS in accordance with the relevant foreign law and at "*a* public register at the port of registry of the vessel." *See id.* at 8 (citing 46 U.S.C. § 31301(6)(B)) (emphasis added). The Court also observed that the parties' British law experts did not dispute that a failure to register the mortgage at Companies House would void the mortgage as against a liquidator and any creditor of the company—assuming that the Companies Act even applied to Juanita. The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5893 PSG (SSx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | Capital Bank PLC v. The M/Y Birgitta | | |

parties did not dispute that the mortgage was valid against Juanita at that time because there was no liquidator to challenge the mortgage for non-registration. *See id.* at 6-7.

On July 14, 2010, Juanita filed a Notice of Liquidation, indicating that Juanita had begun liquidation proceedings in the British Virgin Islands. *See* Dkt. #179. The Court notes, however, that the foreign liquidation proceedings do not divest this Court of jurisdiction over the action.[6] At the time the First Amended Complaint was filed, Plaintiff had a "preferred mortgage" under the SMA, and jurisdiction is determined in reference to the facts as they existed at that time. *See Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 807 (7th Cir. 2010) (Posner, J.) ("Our conclusion vindicates the general principle that jurisdiction once properly invoked is not lost by developments after suit is filed . . . . There are, it is true, exceptions to the principle that once jurisdiction, always jurisdiction, notably where a case becomes moot in the course of the litigation. Or, if the plaintiff amends away jurisdiction a subsequent pleading . . . . And likewise if after the case is filed it is discovered that there was no jurisdiction at the outset . . . ." (internal and external citations omitted)). None of the exceptions to this general principle applies in this case. Therefore, the Court still has jurisdiction over the action.

      B.    <u>Triable Issues of Fact Exist as to Three Alleged Defaults</u>

Defendant demonstrates the existence of material factual issues as to three of the alleged defaults. First, a material factual dispute exists as to whether the payments made by Juanita were timely. Plaintiff claims that, after the parties learned that direct debit would not be an option, the parties agreed that future payments would be made by "standing order." *See* SUF ¶ 16. On the other hand, Defendant claims that the parties engaged in a course of dealings whereby Plaintiff sent the monthly invoices to the wrong address and, when Juanita eventually received the invoices, Juanita made the payments within 30 days of receipt. *See* SGI ¶ 16. Plaintiff does not provide any evidence of the specific standing order allegedly agreed to by the parties, and English law recognizes that contractual terms can be created through a course of dealings. *See id.* at ¶ 47. Thus, there exists a factual issue as to when Juanita's payments were due and whether they were timely made.

---

[6] Additionally, Plaintiff's expert on British law, Michael Joseph McParland, testifies that the arrest of the vessel precludes any non-registration argument by a liquidator. *See* Order Granting Plaintiff's Motion for Summary Judgment Against Cover Drive, Inc. (Dkt. #196), at 5-7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5893 PSG (SSx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | Capital Bank PLC v. The M/Y Birgitta | | |

Second, a material factual dispute exists as to whether Plaintiff consented in writing to the vessel being shipped to the United States. According to Section 11(b) of the Marine Mortgage, it is not clear that prior written consent is required. *See* Marine Mortgage § 11(b) (indicating that prior "written consent" is required for the vessel to be chartered, but that "consent" is required to take the vessel out of the territorial waters of the United Kingdom). The "Details of the Vessel" section of the Marine Mortgage indicates that the vessel will be kept at "Europe," which includes areas outside the territorial waters of the United Kingdom. Defendant also provides a series of e-mails from Adam Marston of the Bank of Scotland, which suggest that Plaintiff was aware of the vessel's location in the United States.[7] *See Coppenrath Decl.* ¶¶ 14, 15, Exs. 111, 112. Thus, there is a factual issue as to whether Plaintiff consented to the shipment of the vessel.

Third, Defendant also points to a genuine issue as to whether the vessel's hull was insured when the vessel was in the United States. Although the original 2006-2007 Policies indicated that the vessel's hull was insured for 16 days after inception—coverage that appeared to have lapsed on April 20, 2010—Defendant provides a copy of the 2006-2007 Endorsement, which indicates that the vessel was covered for the duration of 2006-2007 Policies. Plaintiff contends that this 2006-2007 Endorsement "did not however bear the number of the Policy involved, was not signed by the broker or underwriters involved (and frankly at best looked for all the world like an after the fact 'cya' document conjured up by Juanita or its broker without the knowledge, consent or approval of the Lloyd's underwriters involved)." *Reply* 6:25-28. However, in addition to Exhibit 127 (the copy of the 2006-2007 Endorsement), Defendant provides other evidence that the vessel was covered from August 4, 2006. *See Coppenrath Decl.* ¶ 17, Ex. 123 (copy of Bond & Stein memorandum indicating that "[w]e can confirm that the yacht is covered and has been covered in US waters since July 2005"); *id.* ¶ 18, Ex. 126 (letter from Michael S. P. Garvin to Russell Kelly indicating that "[i]t is quite clear that the Boat has been covered for use in the west coast of USA since the renewal of the insurance and previously"). Thus, even if the Bank did not know that the vessel was covered at the time of arrest, Defendant demonstrates the existence of a genuine issue as to the *fact* of coverage during that time.

Therefore, Defendant demonstrates that summary judgment is not warranted on the grounds of these alleged defaults.

---

[7] Plaintiff is a subsidiary of the Bank of Scotland. *See FAC* at 1:19-20.

**Link to Docs # 128 & 132**

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5893 PSG (SSx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | Capital Bank PLC v. The M/Y Birgitta | | |

C.  No Genuine Material Issue Exists as to the Post-Arrest Defaults

The Court finds, however, that Plaintiff is entitled to judgment as a matter of law because there is no factual dispute that (1) Juanita failed to make *any* payments after the vessel was arrested and (2) Juanita underwent a material change in ownership after the arrest.

1.  Post-Arrest Mortgage Payments

Juanita defaulted on the payment terms of the Mortgage Agreements. Juanita's last and *tenth* payment was made on April 28, 2006, *see SGI* ¶ 14, despite the undisputed fact that the Mortgage Agreements required 120 monthly payments. *See Mot.* 8:2-4 ("Furthermore, after the Bank arrested the Vessel on May 4, 2006[,] Juanita has not made any payments on the loan from May 2006 to the present."). Failure to pay a single monthly installment qualifies as a default and makes the entire principal immediately due. *See, e.g.*, Marine Mortgage § 4(a)(i). Accordingly, no factual issue remains as to whether Juanita defaulted when it failed to pay any of the monthly installments after the arrest.

2.  Post-Arrest Change in Ownership

Juanita also defaulted on both the Marine Loan and the Marine Mortgage when Carl Freer resigned as director of Juanita and when Michael Fleming purchased the company. It is undisputed that Juanita was a registered limited liability company since 2003 and was duly incorporated in the British Virgin Islands under the International Business Companies Act of 1984. *See Stip. Facts*, SF 1. Furthermore, the Marine Mortgage identifies as a defaulting event: "[Y]ou being a limited company there shall occur any material change in ownership or control . . . ." Marine Mortgage § 4(a)(xii). Similarly, the Marine Loan provides for a defaulting event where a limited company has a material change in ownership. *See* Marine Loan § 9.1(xiii)(c).

Defendant does not dispute that Carl Freer's resignation from Juanita and Michael Fleming's purchase of Juanita constituted a "material change in ownership." In its Statement of Uncontroverted Facts, Plaintiff offers the following factual contentions:

·  On July 6, 2007, the Bank learned that the control of Juanita materially

Case 2:08-cv-05893-PSG-SS Document 201 Filed 07/26/10 Page 11 of 13 Page ID #:4469

**Link to Docs # 128 & 132**

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5893 PSG (SSx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | Capital Bank PLC v. The M/Y Birgitta | | |

changed on June 5, 2007 in that Carl Johan Freer resigned from his position as director of Juanita.

· On July 6, 2007, the Bank learned that the ownership of Juanita materially changed in that Michael Fleming purchased Juanita through a company named Business Management and Consultancy Limited.

*SUF* ¶¶ 26, 27. In its Separate Statement of Genuine Issues, Defendant responds to each of these assertions with "Undisputed." *See SGI* ¶¶ 26, 27. Here, Defendant does not dispute Plaintiff's facts, nor does it present any facts of its own that would draw into question the materiality of the change of ownership. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1530 (9th Cir. 1993) (noting that the issue of materiality in a contract is a mixed question of fact and law, but the issue of materiality "need not be left to the trier of fact where, as here, the underlying facts are undisputed and only the legal conclusion to be drawn from those facts remains in doubt"). Accordingly, the Court finds no genuine issue of fact that Juanita defaulted when its ownership changed.

In the opposition, Defendant claims that the notice provision contained in § 9.1(iii) of the Maritime Loan applies to all non-monetary defaults, including the change in ownership and control provision, and required the Bank to provide notice and an opportunity to cure. *See Opp.* 2:9-24 (claiming that § 9.1(iii) mandated notice and an opportunity to cure with regard to, *inter alia*, the change in ownership of Juanita after the arrest). According to § 9.1(iii) of the Marine Loan, the mortgagor defaults on the agreement if "you fail duly to perform or comply with any *other* obligation expressed to be assured by you in *this* Agreement and such failure is not remedied within thirty days after we have given notice to you." Marine Loan § 9.1(iii) (emphasis added).

The Court finds, however, that § 9.1(iii) does not apply here. Plaintiff does not claim any default under § 9.1(iii) of the Marine Loan. Furthermore, the plain language of the provision indicates that § 9.1(iii) pertains to the mortgagor's failure to perform any obligations "other" than those specified in § 9.1—it is not a general notice and cure requirement for all non-monetary defaults listed in § 9.1. Furthermore, the § 9.1(iii) notice provision applies only to "this Agreement" (the Marine Loan). *See id.* Finally, the Marine Loan also contains a default provision for any failure to observe obligations under the Marine Mortgage (without a notice

**Link to Docs # 128 & 132**

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5893 PSG (SSx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | Capital Bank PLC v. The M/Y Birgitta | | |

requirement), *see* Marine Loan § 9.1(viii), and *that* agreement contains a provision providing for default where a limited company has a material change in ownership. Accordingly, § 9.1(iii) does not create a genuine issue as to whether Juanita defaulted when Carl Freer resigned and when Michael Fleming purchased the company.

      3.      Validity of Post-Arrest Defaults

Defendant's only argument with regard to the post-arrest defaults is that the doctrine of unclean hands precludes a finding of default for any events that occurred after the arrest of the vessel. *See Opp.* 13:6-14:20. According to Defendant, Plaintiff arrested the vessel in order to pressure Carl Freer to honor other guarantees owed to the Bank and because the Bank wanted to avoid negative publicity surrounding him. *See Opp.* 13:18-24. Thus, according to Defendant's argument, the arrest of the vessel was wrongful, and the Bank should not benefit from any of the post-arrest defaults.

The Court is not persuaded. Notwithstanding the factual issues pertaining to the pre-arrest defaults, Defendant fails to demonstrate that the Bank lacked a good faith basis in arresting the vessel. In its Order for Issuance of Warrant for Arrest of Vessel, U.S. Magistrate Judge Jacqueline Chooljian ordered the arrest of the vessel after "having reviewed the verified complaint and the supporting papers, . . . and having found that the conditions for an action in rem appear to exist[.]" Dkt. #10. The Order also specified that any claimant is entitled to a hearing to challenge the arrest pursuant to Supplemental Admiralty Rule E(4)(f). *See id.* ("It is further ordered that any person claiming an interest in the subject vessel shall be entitled to a prompt hearing on request at which plaintiff shall be required to show why the arrest should not be vacated or other relief granted consistent with the Supplemental Admiralty Rules."). Juanita never requested such a hearing, nor has it asserted any "wrongful arrest" claims against Plaintiff. *See Reply* 2:4-7. Defendant's evidence of Plaintiff's ulterior motives does not controvert the other grounds for the arrest, especially considering that the only proof of insurance in Plaintiff's possession at the time of the arrest indicated that the vessel's hull coverage had lapsed.

Defendant also fails to demonstrate how the alleged wrongful arrest *caused* the defaults at issue—Juanita's failure to pay back the loan and Juanita's change in ownership. *See Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985) ("In applying the doctrine [of unclean hands], '[w]hat is material is not that the plaintiff's hands are dirty, but that he dirtied them in

Link to Docs # 128 & 132

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5893 PSG (SSx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | Capital Bank PLC v. The M/Y Birgitta | | |

acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendants.'" (citation omitted)). Defendant simply concludes that "[a]ny such post-arrest 'defaults' are the direct consequence of the unjustified arrest—the very means by which [the Bank] 'acquir[ed] the right [it] now asserts.'" *Opp.* 14:18-20. However, Defendant does not explain how the alleged wrongful arrest caused Juanita to stop making payments under the Mortgage Agreements or how it caused Juanita to change ownership.[8] For these reasons, Defendant has not demonstrated that the doctrine of unclean hands should operate to bar Plaintiff's recovery on the grounds of the post-arrest defaults.

   4. <u>Summary</u>

Plaintiff has demonstrated that no genuine triable issue exists as to whether Juanita defaulted on the Mortgage Agreements. First, the uncontroverted facts establish that Juanita failed to make any further payments under the Mortgage Agreements after the arrest of the vessel. Second, it is undisputed that Juanita's ownership materially changed after the arrest. Furthermore, the doctrine of unclean hands does not absolve Juanita from these post-arrest defaults. Accordingly, the Court GRANTS Plaintiff's Motion for Summary Judgment.

IV. <u>Conclusion</u>

Based on the foregoing, the Court GRANTS Plaintiff's Motion for Summary Judgment against M/Y Birgitta. As Plaintiff is entitled to judgment as a matter of law against M/Y Birgitta, Plaintiff's Motion *in Limine* No. 1 is hereby rendered MOOT.

Plaintiff shall prepare and submit a proposed judgment consistent with this order by <u>August 5, 2010</u>.

  **IT IS SO ORDERED.**

---

[8] The result would be different if, for example, Plaintiff claimed a default under §9.1(ix) of the Marine Loan—which provides for default if the vessel is arrested—because the alleged inequitable conduct would have directly caused the default. *See* Marine Loan § 9.1(ix).