O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#208

CIVIL MINUTES - GENERAL

| Case No. | CV 08-5893 PSG (SSx) | Date | October 18, 2010 |
|---|---|---|---|
| Title | Capital Bank, PLC v. The M/Y Birgitta, *et al*. | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy K. Hernandez | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:**     **(In Chambers) Order Awarding Attorneys' Fees and Related Expenses**

Before the Court is Plaintiff Capital Bank, PLC's Motion to Prove Up Attorney's Fees and Other Related Expenses. The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the papers submitted in support of Plaintiff's motion, the Court GRANTS the motion.

I.   Background

The in rem Defendant in this case, M/Y Birgitta ("Defendant" or "vessel") has been the subject of litigation in this Court for well over four years. In July 2005, Plaintiff Capital Bank, PLC ("Plaintiff" or the "Bank") issued a six million dollar loan to Juanita Group, Ltd. ("Juanita") for the purchase of the vessel, secured by a first preferred statutory ship mortgage. Before doing so, Juanita and the Bank executed both a Marine Mortgage and a Marine Loan Agreement in the principal amount of six million dollars plus interest, payable in 120 monthly payments. Both contain a list of defaulting events, any one of which would trigger immediate repayment of the loan. Included in the list of defaulting events is failure to make a payment within 14 days of its due date and any material change in ownership or control of Juanita.

On July 26, 2010, this Court granted summary judgment in favor of the Bank because there was no factual dispute that "(1) Juanita failed to make *any* payments after the vessel was arrested and (2) Juanita underwent a material change in ownership after the arrest." *See* Dkt. #201 (emphasis in original) (Minute Order granting summary judgment). All that remains is

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#208**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5893 PSG (SSx) | Date | October 18, 2010 |
|---|---|---|---|
| Title | Capital Bank, PLC v. The M/Y Birgitta, *et al.* | | |

Plaintiff's Motion to Prove Up Attorney's Fees and Other Related Expenses now pending before the Court. Plaintiff's motion is unopposed.

II.     Legal Standard

For a district court sitting in admiralty, the "American" rule provides that "absent some statutory authorization, the prevailing party in an admiralty case is generally not entitled to an award for attorneys' fees." *APL Co. Pte. Ltd. v. UK Aerosols Ltd.*, 582 F.3d 947, 957 (9th Cir. 2009). "Where the parties specify in their contractual agreement which law will apply," however, "admiralty courts will generally give effect to that choice." *Id.* In contrast to the "American" rule, the "English" rule generally allows the recovery of attorneys' fees and costs by the prevailing party. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975). Moreover, where an attorneys' fees provision is included in a valid contract, a district court has discretion not to award the fees, but only where an award would be "inequitable and unreasonable." *DeBlasio Constr. Co. v. Mountain States Constr. Co.*, 588 F.2d 259, 263 (9th Cir. 1978); *see also McDonald's Corp. v. Watson*, 69 F.3d 36, 45 (5th Cir. 1995) (holding that a district court "abuses its discretion if it awards contractually-authorized attorney's fees under circumstances that make the award inequitable or unreasonable or fails to award such fees in a situation where inequity will not result"). If a court determines that a fee award is in order, the court must calculate the proper amount of the award to ensure that it is reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 433-34, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

III.    Discussion

Plaintiff seeks recovery of $4,069,569.10 in attorneys' fees and other related expenses. The "English" rule and the loan agreements provide independent grounds for Plaintiff's request for attorneys' fees, and the loan agreement provides for recovery of the other expenses incurred by Plaintiff.

     A.     Attorneys' Fees

          1.     Plaintiff's Entitlement to an Award of Attorneys' Fees

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#208

CIVIL MINUTES - GENERAL

| Case No. | CV 08-5893 PSG (SSx) | Date | October 18, 2010 |
|---|---|---|---|
| Title | Capital Bank, PLC v. The M/Y Birgitta, *et al*. | | |

Clause 12.8 of the Marine Loan Agreement provides that "[t]his agreement shall be governed by and construed in accordance with English Law," and clause 14(m) of the Marine Mortgage similarly states that "[t]his Mortgage shall be governed by and construed in accordance with English Law." *See Compl.*, Exs. A-B. As English law controls, the "English" rule for attorneys' fees applies and the Bank is entitled to attorneys' fees as a prevailing party. *See Alyeska Pipeline Serv. Co.*, 421 U.S. at 247. In addition, Plaintiff is contractually entitled to attorneys' fees. Clause 12.1 of the Marine Loan Agreement provides that the borrower "shall, from time to time on [Bank's] demand reimburse [Bank] for all costs and expenses (including legal fees) reasonably incurred . . . in connection with the preservation and/or enforcement of any of [Bank's] rights under this Agreement or as a consequence of any default by [borrower]." *Compl.*, Ex. A. Clause 14(g) of the Marine Mortgage likewise provides that borrower "shall repay to us on demand all expenses, fees, legal or other charges whatsoever incurred by [Bank] in applying for or enforcing payment of any sums payable by [borrower] . . . or in preparing to recover or recovering possession of the Vessel from [borrower] or from any other person (including any payment made by [Bank] in discharge or satisfaction of any lien or alleged lien on the Vessel)." It is clear that reasonable attorneys' fees are owed under both the "English" rule and the relevant provisions of the mortgage agreements.

        2.        <u>Plaintiff's Request for Attorneys' Fees</u>

The customary method of determining reasonable attorneys' fees is known as the "lodestar" method. *See Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). The "lodestar" method involves "multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id.* The resulting "lodestar" figure is presumptively reasonable. *See id.* at 364, n.8. The reasonableness of the time expended and the hourly rate charged can be determined by considering the following factors: (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the necessary skill required; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys on the case; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr v. Screen Extras Guild*, 526 F.2d 67, 70 (9th Cir. 1975). The court need only consider those factors that are relevant to the case. *Sapper v. Lenco Blade, Inc.*, 704 F.2d 1069, 1073 (9th Cir. 1983). A court may reduce the hours claimed where the documentation is inadequate or the time was

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#208

CIVIL MINUTES - GENERAL

| Case No. | CV 08-5893 PSG (SSx) | Date | October 18, 2010 |
|---|---|---|---|
| Title | Capital Bank, PLC v. The M/Y Birgitta, *et al*. | | |

not "reasonably expended," such as where the record reflects duplicative efforts or excessive staffing. *See Sorensen v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001). In such a case, the court must provide a clear explanation for any reduction. *See id.*

Plaintiff requests $963,647.50 in attorneys' fees. In support of its motion, Plaintiff provides billing statements from May 2006 through July 2010, which itemize the number of hours spent by each attorney on the matter and the attorney's hourly rate for each month of litigation. Because the litigation lasted for over four years, the attorneys' rate per hour increased at semi-regular intervals, which is reflected on each month's billing statements. The Court has reviewed the monthly billing statements and calculates the lodestar as follows:

| Name | Rate Per Hour | Hours | Total |
|---|---|---|---|
| **Frank C. Brucculeri** | $215.00 | 204.6 | $43,989.00 |
| | $265.00 | 798.5 | $211,602.50 |
| | $300.00 | 785.7 | $235,710.00 |
| | | | |
| **Bradley M. Rose** | $250.00 | 66.4 | $16,600.00 |
| | $300.00 | 323.8 | $97,140.00 |
| | | | |
| **Gerald L. Gorman** | $215.00 | 46 | $9,890.00 |
| | $265.00 | 247.5 | $65,587.50 |
| | | | |
| **Daniel F. Berberich** | $235.00 | 969.2 | $227,762.00 |
| | | | |
| **Lauren F. Griffo** | $95.00 | 0.7 | $66.50 |
| | $110.00 | 1.7 | $187.00 |
| | | | |
| **Aksana Moshaiv** | $165.00 | 13.7 | $2,260.50 |
| | $200.00 | 1 | $200.00 |
| | | | |
| **Michelle E. Ceja** | $165.00 | 3 | $495.00 |
| | $190.00 | 41.2 | $7,828.00 |

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#208

CIVIL MINUTES - GENERAL

| Case No. | CV 08-5893 PSG (SSx) | Date | October 18, 2010 |
|---|---|---|---|
| Title | Capital Bank, PLC v. The M/Y Birgitta, *et al*. | | |

| | | | |
|---|---|---|---|
| **Sherilyn A. Winford** | $110.00 | 13.6 | $1,496.00 |
| | $125.00 | 18.2 | $2,275.00 |
| | | | |
| **Jamie A. Moran** | $200.00 | 5.3 | $1,060.00 |
| | | | |
| **Lisa G. Taylor** | $250.00 | 59.2 | $14,800.00 |
| | | | |
| **Andre M. Picciurro** | $235.00 | 27 | $6,345.00 |
| | | | |
| **William D. Carey** | $235.00 | 78.1 | $18,353.50 |
| **Total** | | | **$963,647.50** |

Though the total amount of attorneys' fees is large, the Court finds that they are generally reasonable for the reasons that follow.

      a.      <u>The Time and Labor Involved</u>

This litigation started in 2006, had two lives with three different judges, and continues to the present. On February 27, 2006, the Bank filed the first iteration of the case in this Court. *See Capital Bank Plc. v. The M/Y Brigitta ("Case 1")*, No. CV 06-2740 PSG (SSx), Dkt. #1. Almost two years later, the parties voluntarily dismissed the case without prejudice to promote settlement. *See id.*, Dkt. #76 (Stipulation for voluntary dismissal on January 10, 2008). Settlement turned out to be too lofty a goal, and the case was refiled with this Court in September of 2008. *See Capital Bank PLC v. The M/Y Brigitta ("Case 2")*, No. CV 08-5893 PSG (SSx), Dkt. #1. Both cases featured hotly contested motions including jurisdictional motions involving complex questions of English maritime law, *see Case 1*, Dkt. ##13-32; *Case 2*, Dkt. ## 47-54, 59-79, motions to dismiss and vacate the arrest of the vessel, *Case 2*, Dkt. ##92-99, a motion for the sale of the vessel, *see id.*, Dkt. ##122, 125-26, 166-69, a motion for summary judgment against specially appearing party Cover Drive, *see id.*, Dkt. ##155-60, a motion for evidentiary sanctions, *see id.*, Dkt. ##124, 165, and, among others, the dispositive

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#208**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5893 PSG (SSx) | Date | October 18, 2010 |
|---|---|---|---|
| Title | Capital Bank, PLC v. The M/Y Birgitta, *et al*. | | |

motion for summary judgment against the vessel, *see id.*, Dkt. #132. Moreover, there were 23 depositions, 18 of which were noticed by the Defendants, *see Brucculeri Decl.* ¶ 10, and the case came so close to going to trial that the parties filed pre-trial documents as required by the Court, *see id.*, Dkt. ## 136-38, 164. Plainly, a case filed twice, involving over 280 pleadings and numerous quarrels over obscure English maritime-mortgage law required a significant amount of time and labor on the part of the attorneys involved.

        b.    <u>The Novelty and Difficulty of the Questions Presented and the Skill Required to Litigate the Case</u>

The M/Y Brigitta litigation involved extremely difficult questions of English law, which required the Plaintiffs to retain two English law experts. *See Brucculeri Decl.* ¶ 11. For example, in the Motion to Dismiss for Lack of Subject Matter Jurisdiction, the parties had to brief the question of whether the Bank's mortgage on the vessel was valid. *See* Dkt. #47. The mortgage could be valid only if it was met the requirements of the Ship Mortgage Act, 46 U.S.C. § 31321, which recognizes a foreign mortgage only if the mortgage is valid under the laws of the country where it was executed. *See* Dkt. #117 (Minute Order denying Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction). In addition, specially appearing Cover Drive made a claim to the vessel and the Bank had to show that it had a superior interest as determined by English mortgage law. *See* Dkt. #196 (Minute Order granting Plaintiff's Motion for Summary Judgment against Cover Drive). The issues were novel and difficult, requiring significant attention by the attorneys and experts involved. *See id.* n.1 (explaining the qualifications of one of the experts retained by Plaintiffs, Mr. Michael Joseph McParland).

        c.    <u>The Customary Fee and the Experience, Reputation, and Ability of the Attorneys</u>

In determining whether an hourly rate is reasonable, courts consider the experience, skill, and reputation of the attorney requesting fees, as well as whether the hourly rate reflects the prevailing market rates in the community. *Webb v. Ada County*, 285 F.3d 829, 840 n.6 (9th Cir. 2002); *see also Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). Frank Brucculeri is a partner at Kaye, Rose & Partners, licensed to practice law in California since 1988, and rated "AV" by Martindale Hubbell. *Brucculeri Decl.* ¶ 7. Bradley Rose is a founding partner of Kaye, Rose & Partners, licensed to practice law in California since 1987, and rated "AV" by Martindale Hubbell. *Id.* ¶ 6. Together, Mr. Rose and Mr. Brucculeri have conducted over 35

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#208**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5893 PSG (SSx) | Date | October 18, 2010 |
|---|---|---|---|
| Title | Capital Bank, PLC v. The M/Y Birgitta, *et al*. | | |

maritime trials. *Id.* ¶ 7. Daniel Berberich is an associate at Kaye, Rose & Partners, licensed to practice in California since 2001, and has specialized in civil and maritime litigation since becoming a member of the bar. *Id.*¶ 8. Although the rates charged by the firm increased as litigation progressed, partners never charged more than $300.00 per hour and the main associate on the case, Mr. Berberich, never charged more than $235.00 per hour. Based on the amount charged by Defendants' counsel—$450 per hour—and an examination of cases where similar fees were held to be reasonable, the Court finds that the rates charged by Plaintiff's attorneys are within the customary fee range considered to be reasonable. *See e.g.*, *Schultz v. Ichimoto*, No. CV 08-526 OWW (SMSx), 2010 WL 3504781, at *6-7 (E.D. Cal. Sept. 7, 2010) (finding that rates of $300 per hour were reasonable and customary based on other cases where $315 and $350 per hour were reasonable and customary); *Armada Bulk Carriers v. ConocoPhillips*, 505 F. Supp. 2d 621, 624 (N.D. Cal. 2007) (finding that a rate of $325 per hour was a customary and reasonable rate for an attorney in California with 23 years of litigation and trial experience).

       d.  <u>Time Limitations Imposed by the Client or the Circumstances</u>

  Though not determinative, several occurrences over the course of this case required Plaintiff's attorneys to act with a certain degree haste not necessarily present in other cases. For example, when the vessel arrived in California waters, the attorneys had to move to arrest it before it could leave the jurisdiction. *See Brucculeri Decl.* ¶ 12. In addition, Defendants brought an *ex parte* application to stay the case because Juanita filed for liquidation in the British Virgin Islands, requiring the attorneys for the Bank to file an opposition in one business day addressing maritime law, bankruptcy law and the laws of the British Virgin Islands. *Id.*

       e.  <u>The Amount Involved and the Results Obtained</u>

  The original mortgage on the vessel was for $6,000,000. *See* Dkt. #206, ¶ 7 (Final Judgment). Juanita made ten monthly payments of $62,908.56 each, leaving an unpaid principal balance of $5,370,914.40. *Id.* Moreover, late charges and interest accrued on the mortgage add up to $2,601,835.35. Together, the Bank is entitled to $7,972,749.75 based on Juanita's default on the loan. While the attorneys' fees look high upon initial examination, the Court finds that it is reasonable for a Plaintiff to spend just over one-tenth of the amount of the final judgment to litigate the case.

       f.  <u>Departures from the Requested Amount</u>

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#208**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5893 PSG (SSx) | Date | October 18, 2010 |
|---|---|---|---|
| Title | Capital Bank, PLC v. The M/Y Birgitta, *et al*. | | |

The Court, however, has concerns with some entries submitted for reimbursement. From August 2009 through October 2009, Plaintiff's attorneys billed over 400 hours, for a total amount of $105,130.00 in fees. *See Brucculeri Decl.* (billing entries dated 8/31/09, 9/30/09, and 10/31/09). The entries do not specifically address what the hours were billed for, and the Court is unable to find any correlation between the billing entires and the Court's docket that would warrant such high fees. For example, from August 2009 through October 2009, Plaintiff filed an opposition to the motion to dismiss for lack of subject matter jurisdiction, participated in a status conference, and objected to a status report. *See* Dkt. ##92-112. To put it in perspective, Plaintiff billed 293.6 hours in April and May of 2010, presumably to prepare for May's *ex parte* application for sale of the vessel, motion for sanctions, motion for summary judgment and motion in limine. *See* Dkt. ##122-33. Without additional information from Plaintiff, it is impossible to determine whether the 400 hours billed from August 2009 through October 2009 were reasonable and necessary. As a result, the Court reduces that time by half and subtracts $52,565.00 from the total amount of attorneys' fees requested.

Based on the complexity of the case, the total time it has consumed, the rates charged, the hours billed, and the results obtained, the Court finds that Plaintiff is entitled to an award of attorneys' fees in the amount of $911,082.50.

      B.     <u>Other Related Expenses</u>

In addition to attorneys' fees, the Marine Loan Agreement and the Marine Mortgage also allow Plaintiff to recover reasonable costs incurred in the litigation. *See* Dkt. #206, ¶ 8 (Final Judgment); *see also Compl.*, Exs. A-B (Clause 12.1 of the Marine Loan Agreement provides that the borrower "shall, from time to time on [Bank's] demand reimburse [Bank] for all costs and expenses (including legal fees) reasonably incurred . . . in connection with the preservation and/or enforcement of any of [Bank's] rights under this Agreement or as a consequence of any default by [borrower]." Clause 14(g) of the Marine Mortgage provides that borrower "shall repay to us on demand all expenses, fees, legal or other charges whatsoever incurred by [Bank] in applying for or enforcing payment of any sums payable by [borrower] . . . or in preparing to recover or recovering possession of the Vessel from [borrower] or from any other person."). Plaintiff requests that the Court award (1) accrued interest and late penalties, (2) insurance expenses, (3) expert witness fees, and (4) expenses for mediation, travel and private investigation.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#208**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-5893 PSG (SSx) | Date | October 18, 2010 |
|---|---|---|---|
| Title | Capital Bank, PLC v. The M/Y Birgitta, *et al*. | | |

1.  Interest Accrued and Penalties Assessed

On August 6, 2010, the Court entered final judgment in this case and expressly stated that the Bank is entitled to recover interest and late charges on the principal amount of the loan pursuant to the mortgage agreements and English law. *See* Dkt. #206, ¶ 8 (Final Judgment). The terms of the agreements set the annual interest rate on the principal amount of the loan at 1.75 percent above the "U.S. Base Rate." *Ratcliffe Decl.* ¶ 6. After subtracting the 10 payments made by Juanita, the interest accrued between July 9, 2005 and October 3, 2010 is $1,533,223.43. *See id.* In addition, Plaintiff is entitled to late charges which accrue annually as interest set at 5 percent above the "U.S. Base Rate." *See* Dkt. #206, ¶ 8 (Final Judgment); *Ratcliffe Decl.* ¶ 6. That penalty started accruing in April of 2006—after Juanita's last payment—and amounts to $1,068,611.92. *Ratcliffe Decl.* ¶ 6. The total of interest and penalties, therefore, is $2,601,835.35.

2.  Insurance Expenses

Under the terms of the agreements, the vessel was to be continuously covered by an insurance policy. *See Compl.*, Ex. B (Marine Mortgage § 8(a)). According to the Bank, insurance on the vessel lapsed on April 20, 2006, requiring the Bank to provide insurance at its own expense. *See Mot.* 13:9-14. In the present motion, the Bank calculates the cost of providing insurance from the April 20, 2006 lapse until now to be $359,844.33. *See Ratcliffe Decl.* ¶ 7. However, in the July 2010 Minute Order granting summary judgment in favor of the Bank, the Court expressly stated that there was a material factual dispute about whether the vessel was insured at the time of its arrest through part of 2007. *See* Dkt. #201 at 9. It would be unreasonable for this Court to reimburse costs needlessly expended, and the Court cannot determine the insurance expenses necessarily incurred. Presumably, the Bank is entitled to costs related to insurance premiums for the 2007-2008, 2008-2009, and 2009-2010 policies. Until the Bank provides additional information about those specific policies, the Court declines to award costs for insurance premiums.

3.  Expert Witness Fees

The Bank retained two expert witnesses on English law, Mr. Michael McParland and Mr. Nicolas Craig. *See Brucculeri Decl.* ¶ 10. As discussed above, the issues presented in this case were complex and it was reasonable for the Bank to incur costs for the expert witnesses'

**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**#208**

## CIVIL MINUTES - GENERAL

| Case No. | CV 08-5893 PSG (SSx) | Date | October 18, 2010 |
|---|---|---|---|
| Title | Capital Bank, PLC v. The M/Y Birgitta, *et al*. | | |

services.  Moreover, courts regularly award expert witness fees where the parties' contract provides for the recovery of costs.  *See Armada Bulk Carriers*, 505 F. Supp. 2d at 624 (awarding experts' fees where the contract stated: "[T]he prevailing party shall recover all costs and expenses incurred in the exercise of any remedies under the contract.").  Like the provision in *Armada Bulk Carriers*, the costs provisions here allow for reimbursement for "all costs and expenses . . . reasonably incurred . . . in connection with the preservation and/or enforcement of any of [the Bank's] rights under this Agreement or as a consequence of any default by [borrower]."  *See Compl.*, Ex. A (Marine Loan Agreement, § 14(g)).  Mr. McParland and Mr. Craig were paid $96,327.95 in fees, an amount the Court finds reasonable given the complexity and duration of this case.  *See Brucculeri Decl.* ¶ 10.

### 4. Expenses for Mediation, Travel and Private Investigation

Finally, the Bank seeks an award of expenses for mediation, travel, and private investigation as costs covered in the agreements.  First, the parties participated in two days of mediation after dismissing the first case and before filing the complaint in the second.  *See Brucculeri Decl.* ¶ 15.  The cost for the mediation session was $6,650.00, as reflected by the mediation service's invoice.  *Id.*  Second, the Bank's attorneys were "required to travel abroad on two separate occasions" in order to depose witnesses, and were required to travel to Aspen, Colorado in order to depose the former director of Juanita.  *See id.* ¶ 16.  While the amount requested looks high, $32,439.59, there is no indication that it is unreasonable such that it should not be awarded under the parties' contract.  *See id.*  Last, the "Bank incurred costs in connection with private investigation in order to locate the Vessel, which was ultimately found [and arrested] in Marina Del Rey, California."  *Id.* ¶ 17.  The Bank also incurred private investigation costs to locate the former director of Juanita and serve him with a subpoena.  *Id.*  A total of $8,824.38 was paid for those private investigative services, an amount the Court considers reasonable.  As a result, the Bank is entitled to recover $47,913.97 in expenses for mediation, travel and private investigation.

All costs discussed above were incurred by the Bank in this litigation and are recoverable under the parties' contract.  However, the Court cannot determine a reasonable amount of costs associated with insurance premiums and thus declines to award any costs for insurance until detailed coverage statements are provided by the Bank.  In sum, Plaintiff is awarded $2,746,077.27 in expenses.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**#208**

## CIVIL MINUTES - GENERAL

| Case No. | CV 08-5893 PSG (SSx) | Date | October 18, 2010 |
|---|---|---|---|
| Title | Capital Bank, PLC v. The M/Y Birgitta, *et al.* | | |

IV.   Conclusion

Based on the foregoing, Plaintiff is entitled to an award for attorneys' fees and other expenses in the following amounts:

a.   Attorneys' Fees:   $911,082.50

b.   Other Expenses:   $2,746,077.27

The total amount awarded is $3,657,159.77. Plaintiff is ordered to provide supplemental briefing on the insurance premiums paid on the vessel by **November 8, 2010** if it seeks recovery of those costs.

**IT IS SO ORDERED.**